# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Justin Anderson, Evan Schendel, and Brian Lavergne, on behalf of themselves and all others similarly situated, | Civ. No. 10-1929 (MJD/JJK) |
| Plaintiffs, | |
| v. | |
| Timothy Nelson, doing business a Burrito Union;and Rod Raymond, doing business as Burrito Union, | |
| Defendants, | |
| and | |
| Just Take Action, Inc., a Minnesota corporation; Timothy Nelson, doing business a Burrito Union;and Rod Raymond, doing business as Burrito Union, | **REPORT AND RECOMMENDATION** |
| Third-Party Plaintiffs, | |
| v. | |
| Action Systems, Inc., a Delaware corporation; and Tom Diedrich, individually and doing business as Hospitality Solutions Duluth; | |
| Third-Party Defendants. | |

Thomas J. Lyons, Esq., and Trista M. Roy, Esq., Lyons Law Firm, P.A., counsel for Plaintiff.

Joseph J. Mihalek, Esq., Fryberger Buchanan Smith & Frederick, PA counsel for Defendants and Third-Party Plaintiffs.

Eryk A. Folmer, Esq., and Stephen J. Schlegel, Esq., Stephen J. Schlegel, Ltd.; John D. Kelley, Esq., and Scott A. Witty, Esq., Hanft Fride PA, counsel for Third-Party Defendant.

## INTRODUCTION

This matter is before the Court on Third-Party Defendant Action Systems, Inc.'s Motion to Dismiss (Doc. No. 13). On April 30, 2010, Plaintiffs Justin Anderson, Evan Schendel, and Brian Lavergne (collectively "Plaintiffs") filed a class-action lawsuit against Timothy Nelson and Rod Raymond, who were doing business as Burrito Union (collectively "Burrito Union"), for violating the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g) ("FACTA").[1] In the Complaint, Plaintiffs allege that Burrito Union violated the FCRA by printing credit-card receipts that display more than the last five digits of the class members' credit or debit cards. (Doc. No. 1.) On June 1, 2010, Defendants filed an Answer to the Complaint, and on June 11, 2010, Defendants Nelson and Raymond, along with the corporation that owned and operated Burrito Union—

---

[1] The FACTA was enacted on December 4, 2003, and came into effect on December 4, 2006. 15 U.S.C. § 1681c(g)(3). It amended the FCRA to require merchants to redact the expiration date and all but the last five digits of a consumer's credit- or debit-card number on receipts provided to consumers. See 15 U.S.C. § 1681c(g). The Act provides a civil remedy to consumers whose receipts are printed in violation of FACTA, allowing for statutory or actual damages, in addition to possible punitive damages. *Id.* § 1681n(a).

Just Take Action, Inc.[2]—filed a Third-Party Complaint against Action Systems, Inc. ("ASI") and Tom Diedrich, individually and doing business as Hospitality Solutions Duluth (collectively "HSD").  The Third-Party Plaintiffs allege that the statutory violation, if any, was caused by ASI and HSD, with whom the Third-Party Plaintiffs purchased its point-of-sale system from.  In the Third-Party Complaint's prayer for relief, the Third-Party Plaintiffs seek "indemnity and/or contribution for breach of contract, and/or negligent and/or fraudulent representations[.]"  (Third-Party Compl., Prayer for Relief ¶ 1.)  ASI has moved to dismiss the Third-Party Complaint for failure to state a claim upon which relief can be granted.  The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1.  For the reasons stated below, this Court recommends that ASI's motion be granted, but that Third-Party Plaintiffs be allowed an opportunity to amend their Complaint to properly assert the alluded-to common-law claims.

## BACKGROUND

Third-Party Plaintiffs own and operate a business known as "Burrito Union" in Duluth, Minnesota.  Third-Party Defendant ASI manufactures and licenses software, including that utilized in "Restaurant Manager," which is a point-of-sale system used by restaurants to process customers' credit-card transactions.

---

[2]  Nelson and Raymond are shareholders of Just Take Action, Inc.  (Doc. No. 3, Third-Party Compl. ¶ 2.)

(Third-Party Compl. ¶ 3.) According to the Third-Party Complaint, ASI "distributes, sells, installs, configures and maintains the Restaurant Manager system through a network of selected authorized agents and representatives known as dealers or resellers." (*Id.*) Tom Diedrich, who does business under the name of Hospitality Solutions Duluth ("HSD"), is an authorized dealer and reseller of ASI's Restaurant Manager hardware and software point-of-sale system. (*Id.* ¶ 4.)

In January 2007, Diedrich sold a Restaurant Manager system to Third-Party Plaintiffs. Third-Party Plaintiffs allege that as consideration for the purchase of the Restaurant Manager system, ASI (through Diedrich) contracted to provide to Third-Party Plaintiffs "all necessary hardware and software and to install, program and maintain the software necessary to process customer credit card transactions." (*Id.* ¶ 5.) Third-Party Plaintiffs also allege that they paid valuable consideration to Third-Party Defendants for services that included "all acts necessary to insure that [Third-Party Plaintiff's] credit card processing system was configured and operating at all times fully compliant with all applicable federal and state laws, including, but not limited to, the [FCRA and the FACTA]." (*Id.* ¶ 6.) Third-Party Plaintiffs claim that "[t]he ASI restaurant point of sale system sold to [Third-Party Plaintiffs] was installed, programmed and maintained by Third Party Defendants, was under the exclusive control and direction of authorized employees, agents and representatives of Third Party

4

Defendants and was configured and password protected so the settings could be altered only by Third Party Defendants." (*Id.* ¶ 11.) In addition, Third-Party Plaintiffs assert that "[a]t all times material herein, ASI, directly and through its duly authorized employees, agents and representatives Diedrich and HSD, represented and warranted to [Third-Party Plaintiffs] that at all times its ASI software had been installed, configured and maintained to insure strict compliance with all applicable laws, including but not limited to FACTA." (*Id.* ¶ 12.)

In October and November 2009, the named Plaintiffs allegedly received receipts from Burrito Union that were not compliant with the FCRA and the FACTA because the receipts displayed more than the last five digits of their credit or debit cards. Third-Party Plaintiffs allege that they "reasonably relied upon Third Party Defendants and reasonably believed that Third Party Defendants had performed all acts required to insure compliance with FCRA and FACTA." (*Id.* ¶ 7; *see also* ¶ 12.) And "[a]t no time did Third Party Defendants inform or disclose to [Third-Party Plaintiffs] that it had failed to configure the software for the credit card processing equipment so that the equipment operated in a manner which was not fully compliant with FACTA." (*Id.* ¶ 9.) Third-Party Plaintiffs claim that the "Third Party Defendants had a duty to [Third-Party Plaintiffs] to exercise the degree of care and skill required of experts holding themselves out to [Third-Party Plaintiffs] and the public as providers of

turnkey integrated software solutions to the food service and restaurant industry and having special expertise in the programming and maintenance of software used in processing customer credit card transactions and printing receipts of those transactions to comply with all applicable laws, rules and regulations" (*Id.* ¶ 10), and that if Plaintiff's allegations are true, "Third Party Defendants breached their duty to [Third-Party Plaintiffs] by failing to insure that the ASI hardware and software they sold, installed, configured and maintained was at all times operating in a manner that fully complied with FCRA and FACTA." (*Id.* ¶ 13.) Alternatively, Third-Party Plaintiffs allege that the "Third-Party Defendants knowingly and/or negligently made false representations to [Third-Party Plaintiffs] that the hardware and software they sold, installed, configured and maintained was at all time[s] operating in a manner that fully complied with FCRA and FACTA and [Third-Party Plaintiffs] reasonable relied on the false representations to its detriment." (*Id.* ¶ 14.)

## DISCUSSION

I. **Standard of Review**

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical

facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although a complaint need not contain "detailed factual

allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 556.  A complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Id.* at 562 (discussing the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).  Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.

**II.    Analysis**

Third-Party Plaintiffs state in their opposition papers that they have "asserted alternative claims against Third Party Defendants for: (1) indemnity and/or contribution; (2) breach of contract; (3) negligence; and fraudulent and/or negligent misrepresentation" in the Third-Party Complaint.  (Doc. No. 23, Mem. of Law in Opp'n to Third Party Def. Action Sys., Inc.'s Mot. to Dismiss Third-Party Compl. 3.)  The Third-Party Complaint, however, is not quite that clear.  Although some paragraphs resemble assertions that may support breach of contract,

negligence, and fraudulent and/or negligent misrepresentation in part, deciphering each claim for relief is not easy.³ And, the prayer for relief states the following:

> In the event any judgment is entered against Just Take Action, Inc. or any of the defendants, that judgment of indemnity and/or contribution for breach of contract and/or negligent and/or fraudulent representations be entered against Third Party Defendants, and each of them, jointly and severally, for the full amount of said judgment, together with all costs, disbursements and attorney[] fees incurred by Third Party Plaintiffs in this action.

(Third Party Compl., Prayer for Relief ¶ 1.) Based on this statement, which makes any relief contingent upon judgment entered against the Defendants in the original action, and the fact that Third-Party Plaintiffs did not set out separate counts or causes of action in the body of the Third-Party Complaint for the common-law claims, this Court construes Third-Party Plaintiff's Complaint to be one for indemnification and/or contribution only.

The question then becomes whether Third-Party Plaintiff's claim for indemnification and/or contribution is permissible. Third-Party Defendant ASI

---

³ In fact, at this stage determining whether "each claim" has met a *Twombly/Iqbal* standard is virtually impossible when it is not clear from the pleading what "claims" the Court is dealing with. If the Court were to make such a determination, however, it is likely that at least some of the common-law claims that Third-Party Plaintiffs assert that they pleaded would not meet such standard. Nevertheless, leaving the Third-Party Complaint to stand as currently pleaded without amendment would only cause confusion later in this litigation in relation to determining what is relevant discovery, what is relevant questioning, and with constructing coherent jury instructions. At a minimum, this Court concludes that amendment is required to serve the interests of justice and efficiency.

argues that federal law does not recognize a claim for contribution or indemnification from a third-party defendant for an alleged violation of FACTA. Third-Party Plaintiffs conceded at the hearing that a fair reading of the federal case law indicates that this is true with regard to a contribution claim. But Third-Party Plaintiffs contend that the federal law that ASI relies on does not relate to indemnification from an alleged FACTA violation, and because neither the Supreme Court nor the Eighth Circuit have addressed this issue, their claim for indemnification is viable.

This Court concludes that, based on the decided federal case law, neither a contribution nor an indemnification claim from an alleged FACTA violation is viable. A typical contribution claim arises under tort law where "two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability." *Nw. Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 87-88 (1981). Here, the action alleges a statutory violation rather than a tort. The Supreme Court has recognized that a defendant may seek contribution for a statutory violation only if: Congress has created an affirmative cause of action for contribution; federal common law has recognized such a right; or the parties agreed, prior to the litigation, that any liability would be shared. *See Shurland v. Bacci Care & Pizzeria on Ogden Inc.*, 259 F.R.D. 151, 162 (N.D. Ill. 2009) (citing *Kay v. First Cont'l Trading, Inc.*, 966 F. Supp. 753, 754 (N.D. Ill. 1997)

(recognizing "three potential federal grounds for contribution-express or implied congressional enactment, federal common law or private contractual agreement"); *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981); *Nw. Airlines*, 451 U.S. at 90-91). The parties do not dispute that Congress did not expressly or impliedly create a right to contribution under the FACTA,[4] and that federal common law does not recognize a general right to contribution for federal statutory violations. *See Tex. Indus.*, 451 U.S. at 642 (stating that "contribution does not implicate 'uniquely federal interests' of the kind that oblige courts to formulate federal common law"). Nor do Third-Party Plaintiffs contend that the parties had an agreement prior to the commencement of litigation to specifically share in any liability. Instead, Third-Party Plaintiffs seem to assert that the parties had an oral contract whereby Third-Party Defendants essentially warranted or promised that the credit card processing system was configured and operating at all times in compliance with all applicable federal and state laws, including the FCRA and the FACTA. While these allegations could possibly support a breach of contract or breach of warranty claim, they do not support a tort remedy of contribution. *See Shurland*, 259 F.R.D. at 163 ("[A] party's breach of its promise to comply with federal law

---

[4] The plain language of the FACTA states that FACTA applies only to persons who accept credit or debit cards for the transaction of business. 15 U.S.C. § 1692c(g)(1). ASI is not, therefore, a covered entity.

does not support liability for contribution under federal law."). Accordingly, Third-Party Plaintiffs have not stated a claim for contribution here.

With regard to Third-Party Plaintiff's alleged claim for indemnity, the Court reaches a similar conclusion. First, the Court notes that *as pleaded*, the claim for indemnity is dependent on whether judgment is entered against the Defendants in the original action, and therefore is based on the federal statutory claim, and is not currently pleaded as a separate claim for breach of a contract containing an indemnity provision, which would require separate proof of the elements of breach of contract. As such, this Court finds the cases cited by Third-Party Defendant ASI very persuasive.

"Where a third party complaint seeks indemnification or contribution for violation of a federal statute, federal law applies." *McMillan v. Equifax Credit Info. Servs., Inc.*, 153 F. Supp. 2d 129, 132 (D. Conn. 2001) (citing *Doherty v. Wireless Broad. Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir. 1998)). Federal courts have explained that "neither [an indemnity or contribution claim] will lie unless authorized by the statute itself or by federal common law." *Meyers v. Freedom Credit Union*, No. Civ.A. 05-3526, 2007 WL 2753172, at *7 (E.D. Pa. Sept. 21, 2007) (citing *Nw. Airlines*, 451 U.S. at 90). It is clear that neither the FCRA nor the FACTA expressly create a cause of action for indemnity or contribution. And, such causes of action are not to be implied where, as here, the statute otherwise creates a detailed remedial scheme. *See Bowers v. Nat'l*

*Collegiate Athletic Ass'n*, 346 F.3d 402, 425-26 (3d Cir. 2003) ("When a statute creates a private right of action but fails to provide expressly for a right to contribution, particularly if the remedial scheme created is detailed, Congress's silence with regard to contribution weighs heavily against implying such a right because there is a presumption that the silence reflects congressional intent *not* to create such a right."). Albeit outside the Eighth Circuit, "[n]umerous courts have held that indemnity actions are not appropriate under FCTA because the comprehensive statutory scheme provided by FCRA demonstrates that Congress did not intend to provide an indemnification or contribution remedy." *Beringer v. Standard Parking O'Hare Joint Venture*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4890501, at *3 (N.D. Ill. Nov. 12, 2008) (citing *Kay*, 966 F. Supp. at 754-55 (holding no implied contribution right under FCTA); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, No. 05-7097, 2008 WL 630883, at *3 (N.D. Ill. Mar. 5, 2008) ("[N]either the FCRA, nor federal common law, authorize indemnification or contribution under these circumstances"); *Kidlicki v. MDMA, Inc.*, No. 05 C 2589, 2006 WL 1308617, at *3-4 (N.D. Ill. May 10, 2006) (same); *McSherry v. Capital One FSB*, 236 F.R.D. 516, 522 (W.D. Wash. 2006) (same); McMillan, 153 F. Supp. 2d at 132 (same)); *see also Meyers*, 2007 WL 2753172, at *7 n.6 ("Although the *Northwest Airlines* opinion dealt only with contribution, I agree with the various courts of appeals that have held that its reasoning applies with equal force to claims for indemnity.") (citing *Mortgages, Inc. v. U.S. Dist. Ct.*

13

*for the Dist. of Nev.*, 934 F.2d 209, 212 n.3 (9th Cir. 1991); *Levit v. Ingersoll-Rand Fin. Corp.*, 874 F.2d 1186, 1191-92 (7th Cir. 1989); *Green v. U.S. Dep't of Labor*, 775 F.2d 964, 971 (8th Cir. 1985)). This Court agrees.

Further, a claimed cause of action for indemnity is not cognizable under federal common law unless such a cause of action would implicate a "uniquely federal interest," or unless Congress can be deemed to have delegated to the courts the power to "create governing rules of law." *Tex. Indus.*, 451 U.S. at 642. "[T]he only federal interest in . . . indemnification is the vindication of federal statutory rights, but because that interest 'does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority,' it is insufficient to ground a federal common law cause of action." *Meyers*, 2007 WL 2753172, at *8 (quoting *Tex. Indus.*, 451 U.S. at 642). In addition, neither the FCRA nor the FACTA contain delegation to the courts of the power to create additional or supplementary liabilities. Therefore, the "federal common law" ground has not been met here, and Third-Party Plaintiffs have not stated a claim for indemnification.

As the court in *Beringer* explains, "[t]he purpose of FACTA is to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, [and] make improvements in the use of, and consumer access to, credit information" . . . and "the purpose of FCRA is to require that

14

consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 2008 WL 4890501, at *4 (quotations and citations omitted). Nothing in these stated purposes would be undermined if the Third-Party Plaintiffs were allowed to properly assert claims against Third-Party Defendants for breach of contract. However, a statutorily based indemnification cause of action by Third-Party Plaintiffs against Third-Party Defendants would conflict with the statutes' purposes because it could, if successful, relieve the Defendants/Third-Party Plaintiffs of the obligations that they owe to Plaintiffs under the statutes. *See id.* Therefore, even though the proposed damages may be the same sums as would be sought in an indemnification claim, under federal law, Third-Party Plaintiffs must assert their claim in the form of a common law breach-of-contract claim, and in order to succeed, they must prove all elements of that claim.

Accordingly, this Court recommends that ASI's motion to dismiss the Third-Party Complaint should be granted. However, in view of the liberal pleading requirements of the Federal Rules of Civil Procedure, in the interests of justice, and because the date for amending pleadings has not passed, this Court also recommends that the Third-Party Plaintiffs be allowed an opportunity to amend their Complaint within thirty days to properly assert any common-law claims for

15

breach of contract, negligence, and negligent and/or fraudulent misrepresentation.  The Court reminds Third-Party Plaintiffs that any fraud-based claims must meet the Rule 9(b) pleading requirements.  And if there are insufficient facts to properly plead a fraud-based claim, they should forego amending to assert that claim.  This recommendation would not preclude Third-Party Defendants from bringing a motion to dismiss the amended complaint, if such a motion is justified.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Third-Party Defendant Action Systems, Inc.'s Motion to Dismiss (Doc. No. 13), be **GRANTED**; and

2. Third-Party Plaintiffs be allowed an opportunity to amend their Complaint within thirty days to properly assert any common-law claims for breach of contract, negligence, and negligent and/or fraudulent misrepresentation.


Date: November 4, 2010             *s/ Jeffrey J. Keyes*
                                    JEFFREY J. KEYES
                                    United States Magistrate Judge


Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 18, 2010,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure

to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.